**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KAREN DIXON | : | |
|     Plaintiff, | : | COMPLAINT |
| | : | JURY DEMAND |
| v. | : | |
| | : | |
| A BETTER WAY WHOLESALE AUTOS, | : | |
| INC. | : | |
|     Defendant | : | MAY 7, 2015 |

## I. INTRODUCTION

1. This is a suit brought by a consumer residing in Connecticut regarding the purchase and sale of a motor vehicle. Plaintiff brings this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant, A Better Way Wholesale Auto, Inc. ("ABW"), for engaging in a "yo-yo" sale of a motor vehicle, also known as a spot delivery. The illegal, unfair and deceptive actions engaged in consisted of offering financing with ABW acting as the creditor with no valid condition subsequent or precedent regarding ABW being able to assign the financing agreement to a third party, then, upon Plaintiff's acceptance of this offer, delivering possession of the car to the Plaintiff, repossessing the car, and requiring that she enter into a new contract with different terms as a condition of retaking possession.

2. These acts, and others alleged herein, violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"); the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"); the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat §42-110a *et seq.* ("CUTPA"); the Uniform

Commercial Code, C.G.S. §§42a-9-609, 42a-9-611, 42a-9-612, 42a-9-613, 42a-9-614, and 42a-9-615 ("UCC"); the Connecticut Retail Installment Sales Financing Act, C.G.S. §36a-785 *et seq.* ("RISFA"); and also constituted fraudulent misrepresentation, negligent misrepresentation, and breach of contract.

## II. PARTIES

3. Plaintiff is a consumer and natural person residing in New Haven, Connecticut.

4. Defendant, ABW, is a Connecticut corporation that operates a used automobile dealership in Naugatuck, Connecticut.

## III. JURISDICTION

5. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. This court has jurisdiction over ABW because it is a Connecticut company that regularly conducts business in this state.

7. Venue in this court is proper, because the Plaintiff resides in Connecticut, and the claims involve a transaction that occurred in Connecticut.

## IV. FACTUAL ALLEGATIONS

8. ABW, as part of its regular business practice, sells vehicles to consumers who require financing.

9. Consumers who finance their purchases have two options.  They can either obtain financing directly from a lender and give the loan proceeds to ABW, who would treat the transaction as a cash purchase or, they can finance their purchases by entering into retail installment contracts directly with ABW.

10. ABW generally does not retain possession of the retail installment contracts, but instead it assigns the contracts to third party banks or finance companies, who pay ABW.

11. ABW prefers that consumers finance their purchases by entering into retail installment contracts at the dealership, because ABW makes a considerable percentage of its profits on motor vehicle sales through participation incentives. Specifically, banks and finance companies frequently permit ABW to increase the interest rates at which consumers were approved and pay ABW a portion of the extra finance charges generated by the increase. ABW also profits by selling consumers credit-related extras such as GAP addenda.

12. Generally, prior to providing a consumer with a retail installment contract and prior to delivering possession of a vehicle to a consumer, ABW will obtain an agreement from a bank or finance company that it will accept assignment of the retail installment contract.

13. Occasionally, ABW is unable to obtain a firm commitment to accept assignment of a vehicle at the time that a consumer is ready and willing to proceed with a financed purchase.

14. In some instances, in order to avoid losing the sale, ABW will provide a consumer with a retail installment contract in the hope that it will subsequently assign the contract to a finance company.

15. In those instances, ABW has a general business practice of seeking to bind the consumer to the transaction even though it does not intend to honor the retail installment contract if it is unable to assign it to a third party.

16. In other instances, banks or finance companies may give ABW an approval to accept assignment of a contract provided that certain conditions are satisfied.

17. Occasionally, the banks or finance companies may decline to accept assignment after giving such an approval due to a determination that one or more conditions were not satisfied.

18. In late October 2014, Plaintiff contacted ABW to discuss a 2007 Chrysler Aspen (the "Vehicle"), and she spoke with Miriam Rodriguez, a salesperson employed by ABW, who acted as ABW's agent.

19. Plaintiff told Rodriguez that she would have to finance any purchase of a car, and Rodriguez instructed her to complete a credit application and return it to ABW.

20. Plaintiff completed a credit application and faxed it to ABW.

21. A few days later, Plaintiff called Rodriguez to inquire about her credit application, and Rodriguez informed Plaintiff that they were still working on it. Rodriguez also told Plaintiff that she would be required to pay a deposit in order to hold the Vehicle while ABW continued to work on her application.

22. On or about November 13, 2014, Plaintiff called Rodriguez and inquired about the credit application.

23. Rodriguez responded that ABW was still working on the application but that it should be completed by the end of that day.

24. Later that day, Rodriguez called Plaintiff and informed her that she had been approved and should come to the dealership to complete papers for the purchase of the Vehicle.

25. Rodriguez told Plaintiff that she needed to hurry, because the paperwork had to be completed before DMV closed that evening at 8:30 pm.

26. Plaintiff arrived at ABW and met with a finance manager employed by ABW, who acted at all times as ABW's agent.

27. The finance manager presented Plaintiff with contract documents, including a Retail Purchase Order and a Retail Installment Sales Contract, for the Vehicle, and the finance manager rushed her through the execution of the documents so that they could complete the paperwork and register the vehicle before 8:30 pm, the time that he told her DMV closed.

28. One of the documents was a GAP Addendum, which the finance manager told Plaintiff that she was required to purchase as a condition of her credit approval.

29. Plaintiff reviewed the GAP Addendum and saw that the addendum stated that GAP was optional and that it could be canceled for a refund.

30. Plaintiff pointed out those statements to the finance manager and stated that she did not want the GAP Addendum.

31. The finance manager responded that "it is not optional for you," and he showed her a computer screen showing the GAP charge and told her that it was automatic for this deal. He also told her that the GAP could not be canceled and that the addendum was an "old form".

32. The finance manager also informed Plaintiff that "the bank" required that she purchase a contract for oil changes for life at a cost of $1,698, which Plaintiff did not want to purchase, because she was not putting a larger down payment on the Vehicle and because ABW would otherwise not make any money on the sale.

33. The finance manager also informed Plaintiff that "the bank" required that she sign up to have all monthly payments auto-deducted from her checking account.

34. The Retail Installment Sales Contract provided that Plaintiff was the "Buyer" and that ABW was the "Seller-Creditor".

35. The Retail Installment Sales Contract also provided that ABW would assign the contract to United Auto Credit Corp. ("UACC").

5

36. The Retail Installment Contract further provided for an amount financed of $19,810.84 and called for Plaintiff to make 72 payments of $444.29 to the "Seller-Creditor".

37. The Retail Purchase Order and Retail Installment Sales Contract also included an oil changes for life contract for $1,698 and a GAP addendum for $595, both of which were included as part of the amount financed rather than disclosed as finance charges.

38. The Retail Purchase Order and Retail Installment Sales Contract also included a fee of $598 for ABW to process the paperwork necessary to convey title to the Vehicle.

39. The Retail Purchase Order and Retail Installment Contract also included a charge of $140 for registration and title.

40. The Truth in Lending Disclosures on the Retail Installment Sales Contract were not marked as estimates.

41. After Plaintiff signed the contract documents, including the Retail Purchase Order and the Retail Installment Sales Contract, the finance manager told her that she could take delivery of the Vehicle, which was registered to Plaintiff and delivered to her with Connecticut license plates.

42. The first payment for the Vehicle was not due until December 28, 2014.

43. Plaintiff had expected that the payments would be automatically deducted from her checking account, because ABW had informed her that UACC had required automatic payments.

44. Additionally, Plaintiff had previously financed another vehicle with ABW, and payments on that contract were automatically deducted from her account.

45. On approximately January 6, 2015, a representative of UACC called Plaintiff and asked her to verify the amount of the down payment and to inquire about the sales experience.

46. During this conversation, Plaintiff asked the UACC representative about the GAP policy that she was required to purchase, and the representative told her that the GAP was optional. In response, Plaintiff told the representative about the representations that had been made to her by ABW's finance manager.

47. The representative asked Plaintiff about the first payment, and Plaintiff explained that she had expected it to be automatically deducted from her account. She was then transferred to another person for purposes of setting up automatic payments.

48. UACC did not follow through with the automatic payments, and it never sent Plaintiff any payment booklets or other instructions on how she might otherwise make payments under the contract.

49. On information and belief, UACC did not follow through with collecting payments because it had reassigned the contract back to ABW.

50. Neither UACC nor ABW had informed Plaintiff about the reassignment, and Plaintiff was never requested to make monthly payments to ABW.

51. On or about February 4, ABW repossessed the Vehicle without having given any prior notice.

52. Plaintiff objected to the repossession and informed the tow operator that he had no right to take possession of the Vehicle, telling him "You have no right to take my car," "I don't want you to take my car" and "You are not going to take my car."

53. Plaintiff made these protests prior to the time that ABW's repossession agent had secured possession of the Vehicle.

54. Following the repossession, on February 6, ABW sent Plaintiff a notice advising that she could retrieve the Vehicle by making the two payments that were due under the contract

7

in the amount of $701.90 plus repossession charges of $250 and storage charges of $27/day from the date of repossession.

55. On February 11, 2015, Plaintiff called ABW and was connected to an individual believed to be John Albano, ABW's Director of Finance.

56. Plaintiff informed Albano that she intended to come to ABW to redeem the Vehicle.

57. Albano told Plaintiff that he would need to investigate and told her that he would call her back.

58. Albano called Plaintiff on February 13 and asked if she could retrieve the Vehicle on February 15. He advised her that she should plan to be at the dealership for several hours, because there was substantial paperwork that she would be required to complete.

59. Plaintiff came to ABW as scheduled, but Albano was not present. She later called back and was told that the paperwork was not ready.

60. Plaintiff returned to ABW on February 19 and met with a finance manager named Sharon, who informed her that if she wanted to retake possession of the Vehicle, she needed to pay a total of $1,383.90, which amount was equal to the payments due under the original retail installment sales contract, the repossession fees, plus storage for 16 days at $27/day.

61. Sharon also told Plaintiff that, in order to retrieve the Vehicle, she needed to execute a new retail installment sales contract and other purchase documents.

62. The new contract differed from the original contract in several material respects as follows:

    a. The cost of GAP in the second contract was $204 higher than the cost of GAP in the second contract;

    b. The cost of the Oil Changes for Life contract was $1,493 compared to $1,698 in the first contract;

    c. The term of the second contract was 60 months compared to 49 months for the first contract;

    d. The second contract showed a down payment of $2,700 even though the amount paid as a down payment in the first contract was only $2,000 and even though Plaintiff was not required to pay any money other than the amounts stated in the repossession notice;

    e. The sales tax, amount financed, finance charges, and monthly payments differed due to the other differences described above; and

    f. The total cost of the Vehicle under the first contract was $19,196.55 and the total cost of the Vehicle listed under the second contract was $20,103.00.

63. Sharon informed Plaintiff that she was required to purchase GAP and that she was also required to purchase the oil changes for life (or, at her option, a different comparably priced add-on) as a condition of financing.

64. Plaintiff requested that she be permitted to simply continue with the first contract, and Albano informed her that was not an option.

65. Sharon responded that ABW was not set up to receive monthly payments and that she could not continue with the first contract.

## V.     CAUSES OF ACTION

### TRUTH IN LENDING ACT – FIRST CONTRACT

66.     ABW violated TILA and Regulation Z by failing to make proper disclosures to the Plaintiff prior to the time that she became committed to the transaction and by failing to mark the annual percentage rate and other disclosures as estimates.

67.     ABW further violated TILA by its failure to include the GAP Addendum and the Oil Changes for Life contracts as finance charges.

68.     ABW is liable to Plaintiff for her actual damages pursuant to 15 U.S.C. § 1640(a)(1), plus statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3).

### TRUTH IN LENDING ACT – SECOND CONTRACT

69.     ABW violated TILA and Regulation Z by its failure to include the GAP Addendum and the Oil Changes for Life contracts as finance charges.

70.     ABW further violated TILA by its failure to accurately list the amount of the down payment that Plaintiff was required to make.

71.     ABW is liable to Plaintiff for her actual damages pursuant to 15 U.S.C. § 1640(a)(1), plus statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3).

### EQUAL CREDIT OPPORTUNITY ACT

72.     In revoking credit that had been previously granted as evidenced by the first Retail Installment Sales Contract, and in repossessing Plaintiff's Vehicle without her consent, ABW took adverse action against Plaintiff as defined in U.S.C. § 1691d(6) of the ECOA.

73.     In violation of 15 U.S.C. § 1691d(1) and (2) of the ECOA, ABW failed to provide Plaintiff with written notification as to the reasons for the adverse action and failed to provide her with written notification of (a) Plaintiff's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification and (b) the identity of the person or office from which such a statement may be obtained.

74.     As a proximate result of ABW's violations of the ECOA, Plaintiff suffered embarrassment, humiliation, mental distress and inconvenience, and she has been without reliable transportation.

75.     The acts complained herein were done by ABW intentionally, purposefully and/or in reckless disregard of the rights of the Plaintiff.

76.     ABW is also liable to Plaintiff for statutory punitive damages in an amount not greater than $10,000 pursuant to 15 U.S.C. § 1691e(b).

77.     ABW is also liable to Plaintiff for reasonable attorney's fees and costs of this action pursuant to 15 U.S.C. § 1691e(d).

## UCC ARTICLE 9 VIOLATIONS

78.     ABW committed a repossession of her Vehicle when it had no right to do so due to its failure to inform Plaintiff of the manner in which she could make payments for the Vehicle.

79.     ABW further breached the peace by taking possession of the Vehicle notwithstanding Plaintiff's protest and objection to the repossession.

80.     ABW further violated Article 9 by failing and refusing to permit the redemption of the Vehicle under the terms provided in the security agreement and by retaining possession of the Vehicle when Plaintiff was ready, willing, and able to redeem.

81. Pursuant to C.G.S. § 42a-9-625, the defendant is liable to Plaintiff for an amount equal to the credit service charge of $12,178.04 plus ten percent of the principal amount of the amount financed as shown on the Retail Installment Sales Contract, which amount equals $1,981.08 (10% x $19,81084) for a total amount of $14,159.12.

### RISFA- CONN. GEN. STAT. § 36A-785

82. ABW committed a repossession of her Vehicle when it had no right to do so due to its failure to inform Plaintiff of the manner in which she could make payments for the Vehicle.

83. ABW further breached the peace by taking possession of the Vehicle notwithstanding Plaintiff's protest and objection to the repossession.

84. ABW further violated RISFA by refusing to permit Plaintiff to redeem the Vehicle pursuant to Conn. Gen. Stat. § 36a-785(c).

85. Plaintiff is entitled to one-quarter of the payments that she had made under the contract pursuant to Conn. Gen. Stat. § 36a-785(i).

### BREACH OF CONTRACT

86. ABW has breached the first Retail Installment Sales Contract by requiring Plaintiff to execute a new contract as a condition of retaking possession of the Vehicle.

87. Plaintiff is entitled to damages for the loss of use of the Vehicle.

### CONNECTICUT UNFAIR TRADE PRACTICES ACT

88. ABW's conduct, as aforedescribed, was in violation of the Connecticut Unfair Trade Practices Act.

89. The actions of ABW, as described above, have caused Plaintiff ascertainable loss and damages in that she was improperly deprived of the use and full value of the vehicle, she

was denied her right of redemption, and she is being required to pay more for the Vehicle than the amount that she had contractually agreed to pay.

90.     ABW's conduct in requiring the purchase of GAP and the Oil Changes for Life contract as a condition of financing the Vehicle further violated CUTPA.

## NEGLIGENT MISREPRESENTATION

91.     The actions of ABW, acting through its duly authorized employees for whose actions it is liable, in representing to Plaintiff that she had been approved for financing on the purchase of the Vehicle, and then offering financing with ABW acting as the creditor with no condition subsequent or precedent regarding ABW being able to assign the financing agreement to a third party, then, upon Plaintiff's acceptance of this offer, delivering possession of the Vehicle to Plaintiff, and thereafter repossessing the Vehicle when the third party refused to purchase or retain the Retail Installment Sales Contract from ABW, constituted a negligent misrepresentation in that the defendant's agents and employees, while acting within the scope of their authority as agents and employees for ABW, failed to exercise reasonable care or competence in obtaining or communicating proper information regarding the financing of Plaintiff's Vehicle and thereby supplied false information for the guidance of Plaintiff in purchasing the Vehicle, and cause Plaintiff, by her justifiable reliance upon this information, to suffer pecuniary loss.

92.     The actions of ABW have caused Plaintiff damages in that she lost the use and full value of the Vehicle and was without reliable transportation.

93.     Plaintiff has suffered emotional distress, aggravation, and embarrassment because of the defendant's actions.

**Wherefore, Plaintiff claims** for each violation of TILA, actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); actual money damages pursuant to 15 U.S.C. §1679g(a)(1), punitive damages pursuant to 15 U.S.C. §1691e, reasonable attorney's fees and costs pursuant to 15 U.S.C. §1679g(a)(3); pursuant to C.G.S. §42a-9-625, an amount equal to the credit service charge plus ten percent of the principal amount of the amount financed as shown on the Retail Installment Sales Contract; pursuant to Conn. Gen. Stat. § 36a-785(i), 25% of the amount paid under the retail installment contract; a reasonable attorney's fees pursuant to C.G.S. § 42-150bb; statutory punitive damages pursuant to C.G.S. § 42-110g(a); attorney's fees pursuant to C.G.S. § 42-110g(d); common law punitive damages against ABW; and such other further relief to which Plaintiff is, at law, or in equity and by statute entitled to against ABW.

                                        PLAINTIFF, KAREN DIXON

                                        By: /s/Daniel S. Blinn
                                        Daniel S. Blinn, ct02188
                                        Consumer Law Group, LLC
                                        35 Cold Spring Rd. Suite 512
                                        Rocky Hill, CT  06067
                                        Tel. (860) 571-0408
                                        Fax. (860) 571-7457
                                        dblinn@consumerlawgroup.com