UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


- - - - - - - - - - - - - - - x
KAREN DIXON                        No.3:15CV00691(AWT)

        Plaintiff

    vs.

A BETTER WAY WHOLESALE AUTOS
                    HARTFORD, CONNECTICUT
        Defendant     JUNE 7, 2016
- - - - - - - - - - - - - - - x


**STATUS CONFERENCE**


    BEFORE:

        HON. ALVIN W. THOMPSON, U.S.D.J.



APPEARANCES:

    FOR THE PLAINTIFF:

        CONSUMER LAW GROUP
            35 Cold Spring Road
            Suite 512
            Rocky Hill, Connecticut  06067
      BY:  DANIEL S. BLINN, ESQ.

    FOR THE DEFENDANT:

        VOTRE & ASSOCIATES
            8 Frontage Road
            East Haven, Connecticut   06512
      BY:  KENNETH A. VOTRE, ESQ.


                        Corinna F. Thompson, RPR
                        Official Court Reporter

1                                    __3:02 PM__

2                THE COURT:  Good afternoon.  Please be seated

3      everyone.

4                I apologize for the temperature in here.  It's

5      a little bit nippy.

6                We're here in the matter of Karen Dixon versus

7      A Better Way Wholesale Autos, Inc.  The docket number is

8      3:15CV691.

9                Would counsel please state their appearances

10     for the record, please.

11               MR. BLINN:  Good afternoon, Your Honor.

12     Daniel Blinn for the plaintiff.

13               MR. VOTRE:  And Kenneth Votre for the

14     defendant.

15               THE COURT:  Thank you.

16               I was looking at the motion for relief from

17     judgment and the motion to vacate the arbitration award.

18     I guess it's most accurate to say that I was troubled

19     once I looked at all the documentation that the

20     plaintiff submitted.  I was troubled because I was

21     concerned -- well, I read the defendant's papers.  I got

22     one impression of what the record would show.  I looked

23     at what was actually in the record and I felt as though

24     I hadn't gotten a reasonably accurate description of

25     what had happened, and I thought rather than issue an

1    order to show cause I should just have counsel come in

2    and at least attempt to address my concerns.

3            The statements about whether the hearing

4    had -- I put tabs on a couple of things.

5            The thing I must say was most concerning to me

6    was that -- and I think it's Exhibit U to the

7    plaintiff's submission about the hearing be declared

8    closed and that the actual notice from the arbitrator

9    agency -- from American Arbitration Association to be

10   precise -- I found that to be directly contrary to what

11   I thought were some of the representations in the

12   defendant's papers.

13           So maybe you can explain to me how what you

14   put in your memos squares with what's in this very thick

15   submission that I received from the plaintiff.

16           I must say, that's the other thing that

17   troubled me.  I looked at the amount of work that went

18   into this.  I thought the plaintiff ought not to have

19   had to do it, to be candid.

20           So that's where we are and that's why we're

21   here.

22           MR. VOTRE:  Would you like me to address that?

23           THE COURT:  Yes, please.

24           MR. VOTRE:  I disagree, but let me lay it out

25   this way.

1            In our application to vacate, what we see as

2    what happened in this arbitration is the arbitrator

3    issued a decision.  He says basically there's not enough

4    evidence, not enough information to make a damage award.

5    And at that point, to me -- and people can disagree with

6    me -- it's sort of like a court side trial when you

7    haven't proved damages but he then finds that they

8    proved liability.  There was no understanding at that

9    time, at the time the hearing, there would be any

10   evidence of damages after the date of the hearing.  The

11   only thing left open, Your Honor, was just the

12   attorney's fees issue.

13           And then what happens is we get a decision

14   that's termed an interim award, which that had never

15   been discussed at the arbitration, saying there isn't

16   enough information in the file -- I think that's the way

17   he referred to it -- in order to reach definite damages.

18   Definite damages.

19           As we see that, that was a finding that there

20   was insufficient proof of damages.

21           This interim order that came out is not what

22   anyone contemplated.  It was not what was agreed to by

23   the respondent.

24           And then that order enters and he enters an

25   order to submit additional evidence.  I object to that.

```
1    He's right.  I don't file an objection to the specific
2    items because I didn't think there shouldn't be any
3    because we didn't agree to this process.  It's in his
4    decision to my motion that he takes the position that
5    no, no, the hearing was still open.  That's not the way
6    as it ended at that arbitration that we understood it to
7    be.
8            THE COURT:  You didn't understand the hearing
9    to still be open.
10           MR. VOTRE:  Well, the hearing was only left
11   open for the purposes of the brief and that was going to
12   be an attorney's fees submission.  And then depending
13   how I addressed the attorney's fees, I would have the
14   right to address the attorney's fees.  There was never
15   any understanding that essentially as we see it he gets
16   a second bite at the apple to say, okay, now there isn't
17   enough there for damages, put some more evidence in or
18   put some more information in so that I can determine
19   those damages.
20           Our position in that is that that's sort of
21   like a second bite at the apple.  He gets to come in and
22   doing something that we never anticipated.
23           What this wasn't, this wasn't an interim
24   decision where the parties agreed we're going to
25   bifurcate liability from the establishment of damages.
```

1            So while the arbitrator said what the

2     arbitrator said, that's not what happened at the hearing

3     and it was not what was subject to any of the rules that

4     we are proceeding under.  It wasn't as though somebody

5     had agreed, okay, I'm going to enter an interim award

6     and allow people to be able to come in and put in

7     evidence of damages or new arguments about damages.  We

8     had all done what we were supposed to do.  We submitted

9     the case.

10           THE COURT:  But didn't the plaintiff's

11    submission -- as I understood it, the arbitrator was

12    expecting a compilation as to the parties' positions.

13    And what the plaintiff was doing was really referring to

14    things that had already been submitted to the

15    arbitrator.  And we have -- I think I have a copy in

16    this package of the plaintiff's submission to the

17    arbitrator in which the plaintiff's position and

18    evidence on damages is spelled out.  I don't know which

19    of these things it is.  I'm just picking it up to try to

20    put my hands on it.  But the claimant's pre-hearing

21    memorandum, I believe.

22           MR. VOTRE:  I understand that, Your Honor.

23           THE COURT:  And most of them are statutory

24    damages.  So how can you say there was no basis in the

25    record for damages?

1           MR. VOTRE:  But here's what troubles me about

2      that, Your Honor.  The arbitrator says at Point B that I

3      don't have sufficient information in the record to be

4      able to determine damages, tells him to find --

5           THE COURT:  You left out a word, didn't you?

6           MR. VOTRE:  I think precise or --

7           THE COURT:  It's misspelled, but "precisely."

8           MR. VOTRE:  Your Honor, then he didn't

9      determine damages.  Either he couldn't conclude that

10     there were damages at that point or he could.  So the

11     submission by counsel after the fact was in fact

12     utilized by the arbitrator to determine damages.

13          From my reading of it, he didn't determine

14     damages as a result of what was submitted at the proper

15     time.  From our perspective, that's basically like being

16     in a trial court, you try the case to the court and the

17     judge says I find there's liability but you didn't prove

18     damages.  Why don't you come back tomorrow and then add

19     to the record in order to allow me to do that.  And

20     that's what he did.

21          And if we accept the fact that nothing that

22     Mr. Blinn submitted was anything other than argument,

23     then if that's the case, why couldn't the

24     judge determine -- the arbitrator determine it at the

25     time that he actually had the case.

1          So it's inconsistent, Your Honor and troubling

2    to me because then Mr. Blinn wants to argue what he

3    filed was insignificant and all the evidence was in the

4    record.  If all the evidence was in the record, why

5    couldn't the arbitrator decide it?  That's what troubles

6    me about the procedure that happened here.  We never

7    consented to allow a second submission in order to

8    somehow solidify his damages.  Either you can determine

9    them or you can't.  And the case had been submitted,

10   with the exception of the attorney's fees.

11         So there was no understanding that there would

12   be submissions after the matter was briefed and after

13   his attorney's fees went in after some sort of interim

14   decision.  We were expecting a final decision.  There

15   was no understanding there would be an interim decision

16   at the point that that interim decision came down.

17         So that wasn't contemplated by the parties.

18   He didn't indicate what I'd like to do is reserve the

19   opportunity to consider additional evidence on damages

20   at the time that the evidence closed.

21         I do understand the hearing was over.  We were

22   still able to submit briefs and the like.  But it was

23   laid out pretty specifically, it was going to be briefs

24   and his attorney's fees submission.

25              THE COURT:  And where is that?

1              MR. VOTRE:  That was what was discussed at the

2      arbitration.

3              THE COURT:  That was discussion?

4              MR. VOTRE:  And this was not on the record,

5      Your Honor.  There was no court reporter present for

6      this.

7              So that's what surprised me again because it's

8      troubling -- what probably troubles me the most is that

9      he doesn't determine damages.  With or without the word

10     "precisely," he couldn't reach a definitive conclusion

11     as to damages.

12             THE COURT:  I don't understand how you say he

13     couldn't reach a definitive?  Are you hanging your hat

14     on the word "definitive," or you saying he couldn't

15     reach a conclusion as to damages?

16             MR. VOTRE:  He couldn't reach a conclusion to

17     damages.

18             THE COURT:  How could you say he could not

19     reach a conclusion as to damages if a good portion of

20     the damages was statutory damages?

21             MR. VOTRE:  Well, Your Honor, he didn't

22     determine damages.  It's his statement, the arbitrator's

23     statement.  He doesn't determine the damages.  He came

24     to the end of the hearing and he didn't determine

25     damages.  I guess we would have to ask him if he could

1    have if he was required to.  But what we have is his

2    decision and he declines to determine damages at that

3    point.

4         THE COURT:  The record is not sufficiently

5    clear for me to set forth -- and I think the word is

6    "precisely" the statutory and actual damages to which

7    claimant is entitled under these findings.  I don't see

8    that as suggesting that he had no idea what the damages

9    were and he needed more evidence.  He says it's not

10   sufficiently clear for me to set forth.  It could be

11   just because the parties didn't give a clear enough

12   statement when he went back in his notes as to what

13   their positions were on particular items or a particular

14   item.

15        He makes a finding as to the actions do not

16   support punitive damages.

17        MR. VOTRE:  Well, I understand that.  But Your

18   Honor, if we were in a court side trial, the plaintiff

19   has the burden of proof.  At that point he wasn't

20   convinced enough to make a statement as to what the

21   damages were.

22        I don't think there's a gray area; either you

23   determine the damages or you don't.  And it's the

24   plaintiff's burden to establish the damages.

25        THE COURT:  This doesn't say the plaintiff

1  didn't meet its burden.

2         MR. VOTRE:  He wrote what he wrote, Your

3  Honor.

4         THE COURT:  I read it as the plaintiff is

5  entitled to damages, but I want you all to give me some

6  clarification so I can say precisely what damages.

7         MR. VOTRE:  I don't see how could you see

8  that.

9         THE COURT:  Well, the arbitrator didn't agree

10  with you.  I don't agree with you.

11         MR. VOTRE:  We obviously don't agree, but I

12  need to make my record clear, Your Honor --

13         THE COURT:  Yes.

14         MR. VOTRE:  -- that at that point, that was

15  the decision in the case.  The plaintiff had, either by

16  way of argument or evidence, not established his damages

17  because at this point there was no determination of

18  damages.  The arbitrator, not based on an agreement of

19  the parties, then invites, now that he said well, there

20  wasn't enough there for me to conclude the damages --

21  I'm using my own language, Your Honor.

22         THE COURT:  I don't think you're entitled to

23  use your own language, especially if you come here and

24  you file a motion that the plaintiff has to defend.  I

25  think you have to accurately represent to me what the

1    arbitrator said.  And my concern is that when I look at

2    this big -- and I read through all of these documents.

3    When I look at them I felt as though you misled me.

4           MR. VOTRE:  There was no intention to mislead

5    anyone.

6           THE COURT:  I'm just telling you I felt as

7    though you misled me and that's why we're here.

8           MR. VOTRE:  We may disagree.  I believe what

9    I'm arguing.  I sincerely believe that the case ended

10   and the arbitrator, for whatever reason, could not

11   conclude damages at that point that he rendered that

12   decision and then decided to have an additional

13   submission.  And whether it's evidence or argument, he

14   needed that in order to reach the conclusion he did on

15   damages.  Then at that point he finds damages.

16          My point is, Your Honor, if that's the case

17   and he ended and closed the evidence and the case was

18   over and he couldn't write a decision that said here are

19   the damages that I find, and whether he could have or he

20   couldn't have, he didn't write that decision, at that

21   point the plaintiff has not met their burden of proof.

22   And that's what troubles me about it, because at some

23   point the respondent has the right to rely on the fact

24   that the plaintiff has concluded their case and then it

25   goes to the arbitrator to make a decision, just the way

1    it would go to a judge in a court side case.  And he

2    didn't find damages.  He said he needed additional

3    submissions to do that.

4            I believe we have the right to rely at that

5    point that we put the hearing on in accordance to what

6    the parties agreed to do and it concluded and the

7    arbitrator couldn't reach that decision.

8            THE COURT:  When you say in accordance with

9    what the parties agreed to do, what are you referring

10   to?

11           MR. VOTRE:  At the arbitration.

12           THE COURT:  An oral discussion?

13           MR. VOTRE:  The only issue -- he closed the

14   evidence and the only thing we submitted were our briefs

15   and the attorney's fees.  That's how we left this

16   arbitration.  There was no understanding that there

17   would be what he terms an interim decision.

18           Everyone filed their submissions.  The briefs

19   were in.  The evidence closed.  And I get a decision

20   back saying exactly what he said.  I don't want to

21   mislead anybody.  He said what he said.  To me it's

22   clear that at the moment he rendered his decision he was

23   not able to render an award of damages based on what had

24   been submitted.

25           I don't know, Your Honor, what was in his

1    head.   I don't know whether if you search the record he

2    could have come up with damages but chose not to at that

3    point, but what I do know is that he didn't.   And I

4    think the case is as simple as that.

5              And Your Honor, I've been a lawyer for a long

6    time.   I don't intend to mislead anybody.   But I see

7    this entirely differently than you do.   I was actually

8    very troubled with it because I didn't expect any

9    interim decision.   I expected that the case was over

10   with the submissions that we had made and this is what

11   the decision was.

12             I will tell you, when I looked at it -- I

13   didn't open it up, it came by e-mail -- I looked at it

14   and I go, how do they win the case without an award of

15   damages?   To me it was clearly a failure in their proof

16   of damages because at that point the arbitrator was not

17   persuaded in any way in order to render the damages.

18             We can dance a little bit on the head of a

19   pin, but I think it's as simple as the fact that whether

20   he could or couldn't, he didn't award damages at that

21   point, and we can only accept at that moment he was

22   unable to make award of damages.

23             THE COURT:   Why can you say we can only come

24   to that conclusion when --

25             MR. VOTRE:   Because he didn't.

1          THE COURT:  -- that's inconsistent with the

2     language in his interim decision?

3          MR. VOTRE:  I don't see it as inconsistent,

4     Your Honor, because he didn't -- there's no award of

5     damages.  He didn't say it's $1 or $10.  He just said I

6     can't precisely do it at this point.

7          The term "precisely," I'm not quite sure where

8     that comes from.  I'm not sure that the burden of proof

9     required precise.  It requires a preponderance of the

10    evidence.  It's going to be the same burden in any civil

11    case.

12         THE COURT:  Those are two different concepts.

13    Precisely means I can't put down exactly how many

14    dollars but it does suggest I'm going to put down

15    dollars.  It doesn't have to do with burden of proof.

16         MR. VOTRE:  But he still -- then why is it

17    that at that moment in time, why couldn't he put down a

18    number?  Either it was proven, the damages were proven,

19    or they weren't.  I mean I may be looking at in black

20    and white.

21         THE COURT:  I think you are.

22         MR. VOTRE:  But isn't that the way a civil

23    case goes?

24         THE COURT:  No.  If there's an ambiguity in

25    the record I think the judge can ask for clarification.

1    You said this.  I'm going back, I'm looking at what's
2    been submitted and what you're saying is unclear.  I'd
3    like to make sure I know exactly what your respective
4    positions are.  Maybe if you had submitted something,
5    the record would be clearer.  But this says not
6    sufficiently clear for me to set forth precisely.  Not
7    that the plaintiff didn't meet her burden of proving
8    damages, which just makes no sense when you have a
9    determination of liability and some of the damages are
10   clearly statutory damages.
11           MR. VOTRE:  I just -- I understand your
12   argument concerning --
13           THE COURT:  I'm not making an argument.  I'm
14   making a finding.
15           MR. VOTRE:  I'm talking about your position on
16   the statutory damages.  But I think --
17           THE COURT:  Well, how can you read this
18   knowing that there's statutory damages and in good faith
19   come to the conclusion you came to?
20           MR. VOTRE:  Your Honor, I'm kind of
21   dumbfounded because to me, I'm just reading it and
22   that's what it says.  It says he couldn't determine
23   damages.  He didn't determine damages.
24           If Your Honor's -- if I follow Your Honor's
25   position, I would look at this and say, okay, then why

1    didn't he simply say I got these statutory damages and

2    these and these and put them in and I have questions

3    about this, this and this?  He didn't do anything there.

4    So he said what he said and he didn't put $1 of damages

5    in.  So that's what troubles me.  And in good faith I

6    think, reading it -- it's a fair reading to say he

7    didn't determine damages.  And if he didn't, I think the

8    case was over.

9           THE COURT:  And how do you read the bottom of

10    page 6 where it says, "Therefore, claimant is to file

11    its request for attorney's fees, Number 1, and Number 2,

12    claimant is to file a compilation of actual damage as

13    well as her statutory damages and claims under each of

14    her causes of action.  What did you think that meant?

15           MR. VOTRE:  What I thought that meant was that

16    he didn't persuade the judge by way of argument or by

17    evidence as to what damages should be awarded.

18           THE COURT:  Even though what's asked for is a

19    compilation under each of the causes of action, as

20    opposed to evidence, submit evidence as to your actual

21    damages and statutory damages under each of the causes

22    of action, and knowing what you know had already been

23    submitted to the arbitrator?

24           MR. VOTRE:  I understand that, Your Honor.

25    But I see it as an additional submission.

1            THE COURT:  Of evidence?  Okay.

2            MR. VOTRE:  To the extent it's a compilation

3     it's no different than a summary you hand to a jury.

4            THE COURT:  And the reason you see it as

5     additional evidence is that there was no statement

6     setting forth the damages in the interim award; is that

7     correct?

8            MR. VOTRE:  Yeah.

9            THE COURT:  So when the arbitrator asks for

10    clarification before setting forth damages, your

11    position is that that clarification is additional

12    evidence?

13           MR. VOTRE:  I think to the extent it's a

14    summary of damages and it relies on evidence, yes, it

15    is.

16           THE COURT:  When you say relies on evidence,

17    what do you mean by that?

18           MR. VOTRE:  If I admitted a document in a jury

19    trial which was a compilation of damages, a list of

20    specific damages, they go in.  It's an exhibit like

21    anything else, subject to cross-examination like

22    anything else.  So to that extent I believe it's

23    evidence, Your Honor.

24           THE COURT:  The compilation is evidence.

25           MR. VOTRE:  I do this with all due respect,

1      Your Honor.  Your Honor, I understand you disagree with

2      me pretty vehemently.  I understand that.  And I

3      probably equally disagree.  I do this in all good faith,

4      Your Honor --

5                THE COURT:  Yes.

6                MR. VOTRE:  -- but I see it this way.  I have

7      a problem with basically closing the case and then

8      saying give me some more because it may be strategic to

9      some extent, Your Honor, but I'm entitled, on behalf of

10     my clients, to rely on those rules that when the hearing

11     is over, the hearing is over.  And I think I'm

12     entitled -- I think I'm obligated on the part of my

13     client to take that position.  I understand that the

14     arbitrator may want to --

15               THE COURT:  I understand.  And I understood

16     initially your argument that when the hearing is over,

17     the hearing is over.  But what gravely concerned me was

18     to get this report saying that the arbitrator -- the

19     American Arbitration Association said that the hearings

20     were declared closed as of February 24th, and you

21     didn't address that, account for that at all in your

22     submission to me.  That's a determination that the

23     hearings were closed as of February 24th by the

24     organization that is conducting the hearings.

25               I view what you did as the equivalent of

1    saying that a trial I conducted ended after jury

2    selection and the evidence was completed and before I

3    charge the jury and the verdict was returned and telling

4    the Court of Appeals, the case was over on that date --

5    let's just pick April 1st and not April 7th, when the

6    verdict was returned.

7          When I read this my question was:  How could

8    he have told me that the hearing was over when the

9    people who were conducting the hearing are saying it was

10   closed as of February 24th?  I can see arguing the

11   hearing was closed, notwithstanding the fact that the

12   American Arbitration Association said the hearing was

13   declared closed as of February 24th.  I can't see not

14   telling me that it didn't.

15         MR. VOTRE:  I apologize if that's the case,

16   Your Honor.  I didn't see that as a triggering date for

17   a major reason.  That's really the decision that

18   termination after everything the arbitrator asks for.

19         THE COURT:  But to have the organization

20   that's conducting the hearing say this is when it

21   closed, and to take a position that's just based on your

22   opinion and ignoring that report from the association

23   conducting the hearing seems to me to be pretty

24   inappropriate.

25         MR. VOTRE:  Then I apologize if that's the

```
1     case, Your Honor.  I didn't see it as --
2              THE COURT:  Yes, I felt misled, but that
3     isn't -- I don't want apology.  I want an explanation.
4              What concerns me is that the plaintiff's --
5     the arbitrator awarded attorney's fees and it's not an
6     insignificant amount.  There are no attorney's fees for
7     this proceeding.  And what concerns me is if I have a
8     case where somebody goes to arbitration, they get an
9     award, they get their attorney's fees, and then they
10    have to put in a whole lot of time defending against
11    something on a grounds that is undercut by statements
12    from the people who conducted the arbitration, that
13    seems unfair.
14             MR. VOTRE:  Let me first address that.  I
15    don't think that closure date on the AAA has anything to
16    do with this case.  That's the administrative closure of
17    the case when all the papers have been submitted,
18    including if the arbitrator asks for additional
19    submissions that I said was inappropriate to ask for,
20    they are going to close it after the arbitrator gets
21    whatever he asks for.  The arbitrator, if he violated
22    every rule possible and started the hearing three times,
23    they would still issue that notice.  That's when they
24    are just closing administratively.  That's not even
25    based on my argument.  My argument takes into account --
```

1     and I'm sorry if it didn't say that appropriately --

2     that they said that.  That's not any part of the

3     argument.

4           The argument is that we believe the evidence

5     was closed.  We believe that everything that was

6     supposed to be submitted, according to what happened at

7     that hearing, was submitted and then the arbitrator

8     comes up with the idea he would like this additional

9     submission.  That's what the AAA is using to close their

10    hearing.  It's that moment in time that we're focused

11    on.  So I wasn't even focused on that.  That's

12    inadvertent, but I didn't even think it was anything

13    other than an administrative closure from their

14    perspective.  Whatever the arbitrator did, right or

15    wrong, that's the date they would utilize.

16          There was no intent to mislead anybody or look

17    at just this particular date.  What I'm saying is that

18    the evidence closed and the arbitrator made a decision

19    and he couldn't -- and he didn't enter any damages at

20    that point and he needed more beyond what we had agreed

21    to submit in order to do that.  My argument is it's like

22    the closure, it's like the end of a court case, the

23    briefs are in and the evidence is in, it would be

24    unusual and there would be a decision if something was

25    going to be reopened that would have a burden on the

1    plaintiff to establish why that should be reopened.

2    That's not what we have here.  As I viewed it, it was

3    like, okay, you didn't quite persuade me.  Let's do --

4    give me some more.  And I think that's what was

5    offensive to the respondent in this case.

6              I know I'm simplifying it, Your Honor.

7              THE COURT:  That's okay.

8              MR. VOTRE:  I understand the specific language

9    is there, but that's what our argument is.  That

10   administrative closure date is significant to that

11   argument, I think.  There was going to be an

12   administrative closure date at some point anyway.  I

13   guess the argument is that's wrong.  They should not

14   allow the additional information that would have closed

15   it at that point, which is why I filed the motions that

16   I filed saying wait a minute, you didn't find damages so

17   give me an award and then of course the arbitrator

18   denied that.

19             THE COURT:  Which exhibit is that to your

20   papers, Mr. Votre?

21             I think I'm close to it.  I'm at Exhibits Q,

22   R.  I think I'm coming up on it now.

23             MR. VOTRE:  I believe so, Your Honor.  I'm

24   sorry.

25             THE COURT:  It's T.

 1          MR. VOTRE:  And he denied that.

 2          THE COURT:  And in this decision overruling

 3  your objection, it says the interim award was issued

 4  pursuant to Sections 37 and 44B.  Are you familiar with

 5  those sections?

 6          MR. VOTRE:  Under the arbitration rules?  They

 7  were raised by the claimant in this case.

 8          THE COURT:  My question was are you familiar

 9  with them?

10          MR. VOTRE:  Yeah.  They would allow the

11  arbitrator to issue an interim award.  The problem is

12  that he never asked -- there was never an agreement that

13  that's where we were headed.  We closed the evidence.

14  There was no representation by the arbitrator that I'm

15  asking for permission.  I'd like to do an interim award

16  and then we'll determine damages.

17          He heard the evidence on damages, he concluded

18  the evidence on damages, and there was no hearing set up

19  to allow, for example, an interim award and a subsequent

20  hearing on damages.

21          What that rule contemplates --

22          THE COURT:  Are you saying that that rule

23  contemplates that the arbitrator would ask for

24  permission to an interim award?

25          MR. VOTRE:  I would at least think he would

1    tell us.

2              THE COURT:  Does the rule contemplate that?

3              MR. VOTRE:  Yes, I believe it does.  I believe

4    he has to because we wouldn't have known it was

5    happening.

6              Your Honor, the issue here --

7              THE COURT:  Well, my question for you is what

8    does Rule 37 and Rule 44B --

9              MR. VOTRE:  The rule says he can issue an

10   interim award.

11             THE COURT:  Period.

12             MR. VOTRE:  Basically period.

13             THE COURT:  So where are you importing the

14   additional obligations on the arbitrator from?

15             MR. VOTRE:  Because he closed the evidence in

16   this case.  In order to do an interim award and consider

17   damages at a later date, he would have to tell us.  He

18   can't just close the evidence and then say, by the way,

19   when he issues --

20             THE COURT:  The arbitrator says here with the

21   agreement of both parties the hearing was specifically

22   left open.  There's no evidence presented on the

23   claimant's request for attorney's fees.

24             MR. VOTRE:  That's accurate.

25             THE COURT:  That's accurate?

1          MR. VOTRE:  That's all that was left open was

2     the issue of attorney's fees.  We had discussed it.

3     Counsel indicated he wanted to submit his attorney's

4     fees after the hearing.  I agreed to that.  And it was

5     simply as to attorney's fees, not as to damages in

6     general.

7          So you have to read the entire sentence.

8          THE COURT:  If you want to take an example of

9     a court side trial, I never ask for a submission on

10    attorney's fees until I determine that I'm going to

11    award attorney's fees.  I don't award attorney's fees

12    unless that side won.

13         MR. VOTRE:  I understand, Your Honor.  Our

14    procedure sort of tracks the Connecticut state court

15    procedure where technically you're supposed to put your

16    evidence of attorney's fees on in your case is chief,

17    but you can ask the court to submit it in a post-trial

18    hearing.  Mr. Blinn and I have done this on multiple

19    occasions.  And then we discuss -- usually what happens

20    is an affidavit of attorney's fees is submitted and then

21    I have the opportunity to object to it.

22         The only issue that was reserved here was the

23    attorney's fees, which I see as supporting my argument

24    which is we would not precisely save all these

25    attorney's fees for a later issue if in fact the intent

1      was to allow later submissions related to damages.

2              So if I follow what you were just talking

3      about, Your Honor, yes, you can request a submission of

4      attorney's fees evidence after the decision on the case

5      in chief.  In this case, the parallel discussion didn't

6      happen saying, look, I might just decide liability so

7      I'm going to reserve the right to ask you to make

8      submissions on damages.  That wasn't discussed.

9              THE COURT:  When the arbitrator said

10     respondent confuses the failure to prove damage, which

11     could be fatal to a cause of action from providing

12     evidence as to scope of damages -- a little garbled

13     there -- but isn't the arbitrator telling you that the

14     arbitrator concluded that there was not a failure to

15     prove damage when you read this sentence?

16             MR. VOTRE:  He's attempting to make that

17     point, Your Honor.  But he still didn't --

18             THE COURT:  Well, isn't he giving you his

19     ruling on your argument that the plaintiff didn't prove

20     damage?

21             MR. VOTRE:  He is, Your Honor.  That's why

22     we're looking to vacate that.  It's inconsistent with

23     the interim decision which doesn't find any damages.  So

24     he is arguing, well, that doesn't mean he didn't prove

25     damages.  But we have the fact that he didn't find

1    damages.

2            I hate to be arguing so black and white, but

3    he didn't find damages.

4            THE COURT:  But the arbitrator is saying

5    you're confused.

6            MR. VOTRE:  Maybe I'm confused, but I don't

7    think I am.

8            THE COURT:  Well, I'm saying the arbitrator's

9    finding is that you're confused, correct?

10           MR. VOTRE:  And I think he's wrong.

11           THE COURT:  But the arbitrator's finding is

12   that you're confused, correct?

13           The arbitrator's conclusion was that you're

14   confused?

15           MR. VOTRE:  He doesn't accept my argument.

16           THE COURT:  No, no.  His argument is that

17   you're confused -- his finding, rather, is that you're

18   confused.

19           MR. VOTRE:  So maybe I'm confused.

20           THE COURT:  No, no, no.  I'm not saying that

21   you are confused.  I'm saying the arbitrator's finding

22   is that you're confused.

23           MR. VOTRE:  Yes.  That's completely

24   inconsistent with not finding damages at the time the

25   interim award was issued.

1          In fact, Your Honor, I think I can argue that

2     I could have found damages.  I need some additional

3     information to be precise.  But he still didn't find

4     damages.  So when I look at the classic burden of proof,

5     either you can prove the case or you can't prove the

6     case.

7          THE COURT:  The next sentence says, Here

8     claimant prevailed on her causes of action which provide

9     for statutory damage and has requested statutory

10    damages.

11         MR. VOTRE:  And he still couldn't award --

12    didn't award them at the time of the interim award.

13    What additional information would he have needed to

14    award the statutory damages?  Either you take the

15    position Mr. Blinn --

16         THE COURT:  And then the arbitrator also says

17    at the bottom of page 2 -- and I'm reading from Exhibit

18    T -- Thus, while it may be packaged differently,

19    claimant has not provided any additional evidence or

20    arguments.  Respondent has had full and ample

21    opportunity to put on evidence and to support its

22    position.

23         So the arbitrator made a finding that the

24    claimant did not provide any additional evidence or

25    arguments in addition to the statement that the

1    respondent is confusing failure to prove damage, which

2    could be fatal to a cause of action, with whatever

3    follows that at the end of that sentence.  And the

4    statement that here claimant prevailed on her causes of

5    action which provide for statutory damages and has

6    requested statutory damages.

7             All of that is part of the determinations that

8    were made by the arbitrator.

9             MR. VOTRE:  But Your Honor, if you accept that

10   statement as it is, then nothing changed between the

11   interim award and the final award.

12            THE COURT:  I understand that you disagree

13   with the arbitrator's conclusions.  My concern is that I

14   don't know that you -- well, let me just read this over

15   one more time.

16                 (Pause.)

17            THE COURT:  What's the submission agreement?

18   Is this in this stack of papers?

19            MR. BLINN:  The submission agreement?

20            THE COURT:  Submission agreement.

21            MR. VOTRE:  In the purchase order.

22            THE COURT:  The arbitration clause in the

23   purchase order is the submission agreement?

24            MR. BLINN:  No, Your Honor.  When the

25   defendant initially filed its motion to compel

```
 1    arbitration, it cited the arbitration clause that was in
 2    the purchase order.  I filed my own motion to compel
 3    arbitration and to stay the proceeding and I referenced
 4    a different arbitration clause.  It was a subsequently
 5    executed document, which was a retail installment
 6    contract.  It was my motion to stay that was granted and
 7    the defendant's motion was denied as moot.  And the
 8    submission to the American Arbitration Association
 9    attached the clause of the retail installment sales
10    contract.
11         THE COURT:  I'm reading the memorandum from
12    the respondent on page 2 on vacating the arbitration
13    award.  It says the submission agreement did not allow
14    the submission of additional evidence after the close of
15    the hearing.
16         Does the submission agreement discuss that at
17    all?
18         MR. BLINN:  Your Honor, what the submission
19    agreement does is it references the rules of the
20    American Arbitration Association.  It doesn't say
21    anything about it beyond that.
22         MR. VOTRE:  There was no specific reference
23    authorizing any particular evidence after -- in other
24    words, there's no separate authority.  We both agree on
25    that.
```

1              THE COURT:  That's fine.  I was just wondering

2     where that sentence came from.

3                   (Pause.)

4              THE COURT:  And then there's a sentence in

5     here that says the arbitrator made a finding of no

6     damages.

7              MR. VOTRE:  That's what I think he did.  He

8     could not find damages.

9              THE COURT:  Read that finding from the interim

10    award for me.

11             MR. VOTRE:  He says he could not find precise

12    damages.  I think that is a finding of no damages.

13    That's the issue of my argument, Your Honor, that the

14    equivalent of what he did was no damages.  There's not

15    $1 awarded.

16             I think we disagree as to the meaning of his

17    writing.

18             THE COURT:  Well, when it says the arbitrator

19    made a finding of no damages, what I expect to see in

20    the agreement is there are no damages stated.  There are

21    no damages.

22             MR. VOTRE:  He concluded he could not -- I'm

23    paraphrasing -- determine precise damages.  There was no

24    award of damages.

25             THE COURT:  But that's not what your

```
 1    memorandum says.  Your memorandum says that the
 2    arbitrator made a finding of no damages.  It doesn't say
 3    the arbitrator did not make an award of damages because
 4    of blah, blah, blah.  Therefore, it did this.  Those are
 5    materially different statements, in my view at least.
 6              MR. VOTRE:  I think that the conclusion that
 7    he reached that he found no damages at that point.  He
 8    did it later.  But he certainly -- and he said -- the
 9    implication to me is he couldn't do it because he needed
10    more information and then he asked for it.
11              THE COURT:  And then in Exhibit T the
12    arbitrator told you, no, you're wrong.  That's not what
13    happened.  This is my finding as to what happened,
14    correct?
15              MR. VOTRE:  That's correct.
16              THE COURT:  And no where in your submission to
17    vacate the arbitration award did you acknowledge that or
18    alert the Court to that, that that was so?
19              MR. VOTRE:  I apparently didn't, no, but Your
20    Honor and I see these facts differently.
21              THE COURT:  You purport to tell me the
22    background at the beginning of your memorandum, correct?
23              MR. VOTRE:  Yes, I do.
24              THE COURT:  It says background.  And there are
25    some things that are very significant in terms of a
```

1       background.  If you filed a motion and it got denied and
2       there was an explanation as to why it was denied, that's
3       a material part of the background, isn't it?
4              MR. VOTRE:  Yes, Your Honor.  I thought I
5       fully briefed what I thought was the relevant issues.  I
6       did the best I can with good intentions.
7              THE COURT:  Mr. Blinn, do you have anything
8       you think I should know?
9              MR. BLINN:  Just a couple of points.
10             One of the AAA rules, Rule 41 provides that
11      the arbitrator can, even if a hearing is closed, can
12      reopen it for any reason to request additional evidence.
13      The only limitation on the ability to do that is if
14      doing so would prevent the entry of a final award by a
15      specific deadline to have that final award.  That's
16      referenced in my brief and I believe it was also
17      referenced by the arbitrator in his ruling, although he
18      might have gotten the wrong number.
19             Even if the evidence had been closed, the
20      arbitrator acted entirely within the rules of the
21      American Arbitration Association by requesting
22      additional information.
23             With regard to the question of whether or not
24      the hearing or the evidence was or was not closed,
25      Exhibit H is a December 3rd order by the arbitrator.

1      That was the date of the hearing.  That order by the
2      arbitrator makes no reference whatsoever to the evidence
3      being closed.  It makes no reference whatsoever to the
4      hearing being closed.  This was a contemporaneous
5      statement by the arbitrator about the status of the
6      case.
7               I do agree with what Mr. Votre said about the
8      reason for keeping the hearing open.  The reason to keep
9      the hearing open was to enable a later submission of
10     attorney's fees.  However, the hearing was kept open for
11     that reason.
12              There wasn't any discussion about future
13     submission of damages.  I felt that everything necessary
14     to show damages was included in the pre-hearing
15     submission.  What I think the arbitrator was doing is he
16     was looking for some help from the parties rather than
17     trying to sort through it himself.  He was looking for
18     us to come to agreement on what shouldn't be disputed.
19     These damages are mathematical.  There's a formula.  I
20     think that he was looking for the parties just to get
21     together and say what they were.
22              In fact, that's what I tried to do in an
23     e-mail that was included as part of our submission.  The
24     respondent chose not to respond to that.  Respondent
25     chose not to respond to the arbitrator.  I think that

```
1     the arbitrator acted appropriately in all regards.
2              THE COURT:  Is it -- have you had other
3     situations like this one where you have to defend a
4     motion to vacate an arbitration award and put a package
5     like this together?
6              MR. BLINN:  There's currently another case
7     where there was an objection by this defendant
8     represented by this lawyer objecting to an arbitration
9     award.  In that case the award was confirmed and it's on
10    appeal.
11             I think that might be the only case right now
12    that has that status.
13             THE COURT:  I mean, I guess what I --
14             MR. BLINN:  I apologize, Your Honor.  There's
15    another one.  There are two other ones where there were
16    motions to vacate.
17             Am I right?
18             MR. VOTRE:  At least two.
19             MR. BLINN:  Yeah, two, where there were orders
20    confirming the award and those orders are on appeal by
21    the defendant.
22             THE COURT:  This defendant?
23             MR. BLINN:  This defendant, yes.
24             THE COURT:  I guess what I want to make sure
25    of, I'm looking at this of course through the prism of
```

1     this particular case.  I don't practice in this area.  I

2     don't have a high volume of cases in this area.  If this

3     is par for the course in terms of arbitration awards,

4     it's the normal customary practice, I would look at it

5     one way.  I wouldn't look at it favorably, but I would,

6     well, that's the expectation of people that practice in

7     this area.  But if it's not what normally happens, then

8     I'm looking at it as a tactic that I think is

9     inappropriate.

10                    MR. BLINN:  Well, I agree that it's

11     inappropriate for business to compel a consumer to take

12     a claim to arbitration and then to do everything that it

13     can, raising questionable arguments, trying to prevent

14     the final resolution of the claim after that business

15     has lost that arbitration.  I do think that's what

16     happened here.  I do think that there's some of that in

17     the other cases.

18                    I agree it's inappropriate.  I haven't had

19     this happen.  I've never seen this happen with any other

20     business other than A Better Way Wholesale Autos.  But

21     it does seem to be their course of practice to do what

22     they can to forestall what appears to be inevitable.

23                    THE COURT:  I will say I did look at the

24     summary of the evidence.  I think it was the claimant's

25     pre-hearing memorandum or something else that summarized

1    what people were testifying to.  I don't know what

2    actually happened at the hearing, but that was part of

3    what I read that caused me concern.

4             I am going to issue an order to show cause as

5    to why the defendant should not be sanctioned in the

6    form of plaintiff's attorney's fees incurred in opposing

7    these motions.  Twenty-one days.

8             I think what you need to address, Mr. Votre,

9    is why in this background, things that are directly --

10   you may disagree with them, but they directly undercut

11   your position.  And out of candor to the Court and not

12   forcing the plaintiff to have to undertake such a

13   massive undertaking in terms of responding to the

14   motion, I think it was the defendant's responsibility to

15   give an accurate and not misleading summary of the

16   record.

17             MR. VOTRE:  There was no intent to mislead.

18             THE COURT:  I'm not going to make any findings

19   as to intent now.  This is unusual.  I don't like doing

20   this, but I do think the judges of our court have a duty

21   to make sure that people don't win their case and then

22   lose it because they have to continue litigating when

23   the arguments are not fairly presented.

24             MR. VOTRE:  But you do recognize that the

25   application to vacate, both under the federal

1    arbitration act and under the state arbitration act

2    also, a motion to vacate is not an unusual procedure.

3              THE COURT:  I've gotten a number of motions to

4    vacate, and I may have even granted some.  But I've

5    never had one like this where I see as such, what I view

6    at the end of day, a gross mischaracterization of the

7    record of the arbitration.

8              MR. VOTRE:  I came to this hearing today under

9    no understanding that I misstated anything.  In fact, I

10   thought, to tell you the truth, we had done a pretty

11   good job.  I'm at a loss.  I'm surprised.

12             THE COURT:  I can tell that.  I guess what you

13   need to focus on is the concept of affirmative

14   misstatements and material omissions.  You can't sit

15   there with two cases, one going one way, the other going

16   the other way, and then tell the judge that, Judge, the

17   case law supports Position X, when the second case you

18   have in your other hand says not X, and then say, well,

19   I made an accurate statement.  That's to sort of help

20   you understand where I'm coming from.

21             MR. VOTRE:  I understand.  But I think the

22   actual issue in the case we both look at from totally

23   different directions and we'll deal with -- you said 21

24   days?

25             THE COURT:  The issue isn't the issue in the

```
 1    case.  The issue is the record before the arbitrator and

 2    how you represented to the Court what the issue in the

 3    case is.

 4              MR. VOTRE:  All right.

 5              THE COURT:  And the burden that you placed on

 6    the plaintiff because of the way you proceeded.  If you

 7    all work out something short of having me have to make a

 8    finding, which I suspect you wouldn't want, let me know

 9    and I'll be happy to vacate the order to show cause.

10              MR. VOTRE:  And the order to show cause is

11    asking me to produce what, Your Honor?

12              THE COURT:  Why I should not impose sanctions.

13              MR. BLINN:  Of attorney's fees?

14              THE COURT:  Reasonable attorney's fees, to be

15    clear.

16              MR. BLINN:  Thank you, Your Honor.

17              THE COURT:  Thank you.

18                  (Whereupon, a recess followed.)

19

20

21

22

23

24

25
```

```
 1                    C E R T I F I C A T E

 2

 3          KAREN DIXON V A BETTER WAY WHOLESALE AUTOS

 4                    3:15CV00961(AWT)

 5

 6

 7              I, Corinna F. Thompson, RPR, Official Court

 8     Reporter for the United States District Court for the

 9     District of Connecticut, do hereby certify that the

10     foregoing pages, pages 1 - 40, are a true and accurate

11     transcription of my shorthand notes taken in the

12     aforementioned matter on June 7, 2016, to the best of my

13     skill and ability.

14

15

16

17

                        /s/_____
18
                        CORINNA F. THOMPSON, RPR
19                       Official Court Reporter
                        450 Main Street, Room #225
20                       Hartford, Connecticut 06103
                           (860) 547-0580
21

22

23

24

25
```